UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Rosa Gipson,**

**Plaintiff,**

**v.**

**David R. Beaudet,**

**Defendant.**

**Civil No. 01-2142 (PAM/SRN)**

**ORDER**

---

Jerome A Ritter, Esq., on behalf of Plaintiff.

Thomas F. Hutchinson, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on October 28, 2002, on Plaintiffs' Motion to Amend Complaint to Include Claim for Punitive Damages (Doc. No. 13).

This Order addresses that motion.

## I. PLAINTIFFS' MOTION TO AMEND COMPLAINT TO ALLEGE PUNITIVE DAMAGES.

### A. Factual Background.

Plaintiff is a 55-year old woman who was renting a house at 390 Sherburne, St. Paul, MN from Defendant when the conduct relevant to the present case took place. In 1992, Social Security Disability Determination Services determined Plaintiff to have mild mental retardation. (Affidavit of Jerome A. Ritter, Exhibit B.) The Complaint currently includes claims for

FILED JAN 2 8 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq., sexual harassment in violation of the Minnesota Human Rights Act, Minn. Stat. § 363.01 et seq., and breach of a rental agreement in violation of Minn. Stat. § 504B.161.

Plaintiff lived at 390 Sherburne for almost two years. (Deposition of Rosa Gipson (Gipson Depo.) at 61.) Plaintiff stated in her deposition that during the time she was living there Defendant repeatedly sexually harassed her. She stated that Defendant fooled her by asking her to come to his house to work, when in truth, "he was just wanting somebody to come up there and so he could do some sex at his house." Id. at 51. Plaintiff testified that in one case, Defendant tried to get her drunk, then started playing a pornographic movie, and finally "took his pants off and asked me to go down and suck his you know what. . . . he took my head, trying to push me down and make me suck him." Id. at 43-44. Plaintiff also stated that "I told him I didn't want to do sex. I come and work. I didn't come to do nothing like that." Id. at 44. Plaintiff also testified that Defendant "had sex many, many time, not only three times. I can't remember all the time, but I know he got out of place and had sex relations." Id. at 55.

During Defendant's deposition, he stated that he has never engaged in any type of sexual conduct with Plaintiff. (Deposition of David R. Beaudet at 33.) In addition, Defendant stated he was never aware that Plaintiff had any intellectual limitations. Id. at 36-37.

**B. Pleading Requirements.**

**1. Punitive Damages under Minn. Stat. §§ 549.19 & 549.20.**

"In the Federal Courts of this District, the pleading of a punitive damage claim, under causes of action premised upon the Laws of the State of Minnesota, must generally conform to the requisites of Minnesota Statutes Sections 549.191 and 549.20." Ulrich v. City of Crosby,

848 F. Supp. 861, 866 (D. Minn. 1994).

"As recognized by our Court, the Minnesota Legislature adopted, in 1986, the pleading requirements of Section 549.191 in order to deter certain practices in the presentment of punitive damage claims which were thought to be abusive, and in order to deter a perceived insurance crisis." Ulrich, 848 F. Supp. at 866-67. In all instances in which Minn. Stat. § 549.191 applies, a plaintiff may not assert a punitive damage claim in the complaint in the first instance, but rather must seek leave of court to amend the pleading pursuant to that section.

Under Minn. Stat. § 549.191, a motion for leave to amend a complaint to add a claim for punitive damages must set forth prima facie evidence in support of the motion, must allege the "applicable legal basis under section 549.20 or other law for awarding punitive damages in the action," and must be supported by one or more affidavits showing the factual basis for the claim. The "applicable legal basis" reads as follows: "Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a).

Minn. Stat. § 549.20, subd. 1(b) states that:

> A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Thus, at the amendment stage, the supporting affidavits provided by the plaintiff must present a prima facie showing of clear and convincing evidence that the acts of the defendant

exhibit a deliberate disregard for the rights or safety of others. Olson v. Snap Products, Inc., 29 F. Supp. 2d 1027, 1037 (D.Minn. 1998) citing Swanlund v. Shimano Ind. Corp., Ltd., 459 N.W.2d 151, 154 (Minn. Ct. App. 1990). Prima facie evidence is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." Black's Law Dictionary 579 (7th ed. 1999); McKenzie v. Northern States Power Co., 440 N.W.2d 183, 184 (Minn. Ct. App. 1989) ("prima facie evidence is that evidence which, if unrebutted, would support a judgment in that party's favor"). Under the prima facie standard, "the Court makes no credibility rulings, nor does the Court consider any challenge, by cross-examination or otherwise, to the Plaintiff's proof." Ulrich, 848 F. Supp. at 867. Further, the motion should be thoroughly examined, "without considering evidence submitted in opposition." Northwest Airlines, Inc. v. American Airlines, Inc., 870 F. Supp. 1499, 1503 (D. Minn. 1994) citing Swanlund 459 N.W.2d at 154.

"Where the evidence is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard to the rights or safety of others, the 'clear and convincing' standard would be satisfied." Ulrich, 848 F. Supp. at 868.

When a plaintiff moves to add a punitive damage claim, the Court is essentially required "to direct a portion of the verdict against the plaintiff if the evidence of [deliberate disregard] is insufficient." Swanlund, 459 N.W.2d at 155. Thus, as in ruling on a motion for directed verdict,[1] the Court must view the evidence most favorably to the party against whom the motion is made, and give that party the benefit of all reasonable inferences from the evidence. See

---

[1] Now denominated in the Federal Rules of Civil Procedure as a motion for the entry of judgment as a matter of law. See Fed. R. Civ. P. 50(a).

Abbett v. County of St. Louis, 474 N.W.2d 431, 433 (Minn. Ct. App. 1991).

### C. The Parties' Positions.

Plaintiff states that she should be entitled to add a claim for punitive damages. She asserts that Defendant's conduct was malicious, willful and deliberate, thus meeting the deliberate disregard standard necessary to plead a punitive damage claim. Plaintiff states that Defendant's repeated demands for sex are worse given that she is mentally retarded. She concludes that Defendant's conduct is precisely the type which warrants punitive damages under Minnesota law. Plaintiff also states that punitive damages are allowed and authorized in the present case under the Federal Fair Housing Act, 42 U.S.C. § 3613(c) and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363.071, subd. 2.[2]

Defendant responds that Plaintiff should not be permitted to add a claim for punitive damages. He denies that he ever sexually harassed Plaintiff. Citing to Plaintiff's deposition, Defendant argues that "Plaintiff has failed to present any evidence of her claim other than her own allegations; these are the allegations of a woman who has a test 'I.Q.' age of 4 ½, was abused by her father, does not know the color of the American flag, cannot describe the shape of a ball and believes that there are 6 months in a year."

---

[2]"The MHRA allows a plaintiff to seek punitive damages under Section 549.20 for a violation of the MHRA." Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1300 (8th Cir. 1997).

The Fair Housing Act specifically provides that "[i]n a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred . . ., the court may award to the plaintiff actual and punitive damages." 42 U.S.C. § 3613(c). Thus, a party may plead punitive damages directly under this federal statute. Plaintiff, however, makes no specific arguments concerning entitlement to plead punitive damages under the Fair Housing Act, nor does she ever address the standard for such a punitive damage claim. Therefore, the Court presumes that she has referred to the Fair Housing Act in her present motion simply to further demonstrate entitlement to add a claim for punitive damages under Minn. Stat. § 549.20.

Defendant states that even if the conduct complained of is taken as true, it does not rise to the level of deliberate disregard, which is required to include a punitive damage claim. Instead, this conduct at most constitutes gross negligence. Defendant cites Bougie v. Sibley Manor, Inc., 504 N.W.2d 493 (Minn. Ct. App. 1993) in support of his argument. In Bougie, a plaintiff was subjected to offensive acts of groping and foul language. Nevertheless, the court concluded that this behavior was insufficient to meet the test for punitive damages, which at that time was a lower standard of willful indifference.

In addition, Defendant cites to Boykin v. Perkins Family Restaurant, 2002 WL 4548, No. C9-01-1100 (Minn. Ct. App. Jan. 2, 2002) to argue that punitive damages are not appropriate in the present case. In Boykin, the plaintiff endured similarly poor behavior, and the court concluded that the behavior did not meet the current deliberate disregard standard for pleading punitive damages.

Defendant also argues that Plaintiff's evidence is not clear and convincing, because she fails to provide any specific information concerning the time and date of the alleged acts. In addition, Defendant argues that he "did not have any personal knowledge of Plaintiff's mental status; he did not have access to her disability file; and he did not have any reason to question her IQ because it did not come into play because Defendant only interacted with Plaintiff on a limited basis." Therefore, Defendant explains, he can not have acted outrageously as Plaintiff claims. Finally, Defendant observes that despite the alleged conduct, Plaintiff never called the police, filed a complaint, informed her family or friends, stopped working for Defendant, or changed apartments. "The fact is, the first time Plaintiff ever mentioned these alleged acts was when she was about to be evicted. Perhaps Plaintiff was willing to try anything to keep from

being evicted."

**D. The Court's Order.**

**1. Punitive Damages under Minn. Stat. § 549.20.**

The Court grants Plaintiff's motion. Plaintiff has complied with the pleading requirements of Minn. Stat. § 549.191, by correctly seeking leave of the Court to amend the complaint and add a punitive damages claim, rather than alleging it in the first instance. Further, the Court finds that Plaintiff has made a prima facie case of clear and convincing evidence that Defendant acted with deliberate disregard for Plaintiff's rights.

The Court finds Boykin distinguishable from the present case based on the following quotation:

> Boykin argues that she was entitled to make a claim for punitive damages because Perkins "exhibited a callous and reckless disregard for appellant's rights by promoting the perpetrator of the harassment" after Boykin informed Modeen of Sehm's conduct. We disagree. After Modeen spoke with Boykin about her problems with Sehm, Modeen gave Sehm a verbal warning about his conduct, spoke with managers and service leaders about the no-touch policy, and posted a note regarding the no-touch policy. The evidence supports the district court's finding that Perkins did not take timely and appropriate remedial action but does not mandate a finding of a willful disregard for Boykin's rights.

2002 WL 4548 at *6.

In the present case, unlike in Boykin, Defendant is the specific individual whose acts are complained of. Further, there is nothing in the evidence provided in support of Plaintiff's motion indicating that Defendant responded to her complaints by ceasing his objectionable behavior. Therefore, Boykin's holding does not require denying Plaintiff's motion to add a claim for punitive damages.

The Court acknowledges that punitive damages should only be rewarded in the most extreme cases. Further, Minnesota case law demonstrates that there is a great deal of poor behavior which is still insufficiently deliberate to support a claim for punitive damages. Nevertheless, in the present case Plaintiff has alleged repeated acts of sexual harassment. At least one of these incidents included Defendant first attempting to get Plaintiff drunk, and later attempting to physically force her into performing sexual acts with him over her objections. The Court finds this evidence sufficient to allow her to plead a claim for punitive damages under Minn Stat. § 549.20.

The Court will not accept Defendant's argument that Plaintiff's reduced mental capacity renders her deposition testimony not credible. As a general matter, the Court does not find Plaintiff's mental capacity should necessarily decrease her credibility. And regardless of the particular plaintiff, Ulrich states that the Court should make no credibility rulings at this stage. 848 F. Supp. at 867. In order to meet the clear and convincing standard, Plaintiff needs to provide evidence from which a jury could conclude that it is "highly probable" that Defendant acted with deliberate disregard to her rights. Id. at 868. The Court finds Plaintiff has met this standard.

**THEREFORE, IT IS HEREBY ORDERED that:**

Plaintiffs' Motion to Amend Complaint to Include Claim for Punitive Damages (Doc. No. 13) is **GRANTED**.

Dated: January 27, 2003

SUSAN RICHARD NELSON
United States Magistrate Judge